(March 4, 1993)

■ CLAYTON INTERNATIONAL, INC., Respondent, v CHARLES OFFSET CO., INC., Defendants, et al., and HESSELBACHER PAPIER-IMPORT UND EXPORT GMBH & Co. KG, Appellant. [595 NYS2d 676] —Order and judgment, Supreme Court, New York County (David H. Edwards, Jr., J.), entered on or about September 30, 1991 and October 18, 1991, respectively, affirmed for the reasons stated by Edwards, J., with costs and disbursements. Concur—Murphy, P. J., Wallach, Ross and Rubin, JJ.

Asch, J., dissents in part in a memorandum, as follows: Plaintiff Clayton, a paper merchant located in New York City, ordered the subject paper which was found to be defective, from defendant Hesselbacher, a German paper merchant. The terms of the sale were shipment C&F (cost and freight) port of New York and the paper was loaded aboard the defendant Nedlloyd ship in Livorno, Italy, on June 12, 1984 packed in 18 steel containers. The shipment arrived and was unloaded in Newark on June 26, 1984. The 18 containers were stored on the dock by Clayton's agent Global, from that date until they were delivered to Charles Offset by Clayton's trucking agent, Reliable, over a period of time from July 3 to July 19, 1984.

I do not quarrel with the finding of the IAS Court regarding the relative rights of Clayton and Charles Offset. However, I disagree with its conclusion regarding the liability of defendant Hesselbacher.

Pursuant to UCC 2-320 (1), "[t]he term C.& F. or C.F. means that the price so includes cost and freight to the named destination." Comment 16 of that section notes that "[u]nder the C.& F. term, as under the C.I.F. term [cost, insurance & freight], title and risk of loss are intended to pass to the buyer on shipment."

Thus, Clayton, *not* Hesselbacher, had the burden of proving that the damages occurred while the goods were under the control of Hesselbacher. Clayton did not sustain this burden by simply relying on Charles Offset's proof that the damage occurred before the goods arrived at its plant in Long Island City. Since the risk of loss passed to Clayton upon delivery to the carrier in Italy, the plaintiff was obligated to prove that the damage occurred before that delivery. Based upon the evidence before the IAS Court, viewed most favorably toward Clayton, it was just as likely that the damage occurred sometime before the goods arrived at Long Island City, but *after* the goods left the control of Hesselbacher.

Clayton did not even attempt to show that the paper was

defective before it was shipped from Italy. This is particularly pertinent in this case because of the damage which *was* proven by Charles Offset. This damage, demonstrated by testimony as to the condition of the paper on delivery to Charles, involved crushed, wet and out-of-round cores on which the rolls of paper were wound. It may be noted that the expert witness for Clayton testified, this damage to the paper was consistent with damage caused by shifting of the rolls of paper within the container, which would occur while the container was in transit.

Thus, while the IAS Court relied on evidence before it in finding that "Charles has sustained its burden of establishing a breach by Clayton", it erred when it ruled "[l]ikewise, Clayton who is entitled to rely upon that burden [citation omitted], is entitled to recover on its claim against Hesselbacher".

The trial court dismissed the actions against the defendant carrier and the defendant insurer, finding as a matter of law, that Clayton failed to establish by a preponderance of the credible evidence that the paper was damaged in transit, noting, *inter alia:* "In order to recover on a theory of breach of contract of the bill of lading issued by defendant Nedlloyd and in accordance with the The Carriage of Goods by Sea Act ('COGSA'), 46 USC [Appendix] § 1300 et.seq., Clayton was required to show that the paper was in a good and merchantable condition at the time the cargo was placed in the control of the carrier Nedlloyd [citations omitted]. Under the facts of this case and, in part, because of the default of the manufacturer Sterzi, who packed the paper for shipment, Clayton was unable to make the requisite showing. Hence, the claim against Nedlloyd was dismissed. In addition, Clayton having failed to establish that the paper was damaged in transit, it followed that the insurer, Federal, could not be held liable for any cargo damage sustained which was not shown to be within the terms of coverage of the marine cargo insurance policy."

The fact, however, that plaintiff Clayton failed to meet its burden against the carrier and the insurer of showing that the damage occurred in transit, does *not* mean it, *ipso facto,* automatically met its burden against Hesselbacher of showing that the damage did *not* occur in transit from Italy, when it had the title. The carriage of the paper from Italy by ship, the storage of the paper on the dock at Newark and the transport of the paper from Newark to Long Island City over a number of days by Clayton's agent to Charles, were all periods of time

when the risk of loss was on Clayton, not Hesselbacher. Clayton did not meet its burden of proving that the damage did not occur within these periods, and therefore, its causes of action against Hesselbacher should have been dismissed.